**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,

Plaintiff,

v.

Marques Armstrong, Jr.,

Defendant.

Case No. 24-cr-293(2) (PJS/DTS)

**ORDER AND REPORT & RECOMMENDATION**

---

## INTRODUCTION

This Order and Report & Recommendation addresses Defendant Marques Armstrong Jr.'s ten pretrial motions. The Court recommends granting in part and denying in part Armstrong's motions to suppress; recommends denying Armstrong's motions to dismiss; denies Armstrong's motion for severance; denies Armstrong's motion for a bill of particulars; and grants Armstrong's request for early disclosure of confidential informants but otherwise denies his discovery motions.

## FACTS

### I. Case No. 14-cr-364

In 2014 Armstrong was charged with conspiracy to violate 18 U.S.C. § 922(g)(1), which makes it a federal crime to be a felon in possession of a firearm. Indictment, *United States v. Black*, 14-cr-364 (D. Minn. Nov. 12, 2014) (Dkt. No. 1).[1] The 2014 Indictment alleged that "defendants organized and maintained two closely associated street gangs known as the 1-9 gang . . . and the Stick Up Boys gang[.]" *Id.* ¶ 1. Armstrong was alleged

---

[1] The conspiracy charge was the sole charge against Armstrong in the 2014 Indictment.

to be a prominent member of the Stick Up Boys gang. *Id.* One "purpose of the gangs was to obtain, possess, and use firearms." *Id.* ¶ 3. Armstrong pleaded guilty in 2015 and was sentenced to 57 months imprisonment. *United States v. Black*, 14-cr-364 (D. Minn.) (Dkt. Nos. 327, 666).

**II. Case No. 21-cr-228**

On October 12, 2021, while he was still on supervised release, Minneapolis Police (MPD) arrested Armstrong and seized two cellphones. *United States v. Armstrong*, No. 21-cr-228, 2022 WL 17417901, at *3–6 (D. Minn. Sept. 2, 2022), *R & R. adopted by* 2022 WL 16960633 (D. Minn. Nov. 16, 2022). The MPD promptly obtained two substantively identical warrants to search the cellphones. *Id.* at *2. On October 26, 2021, a grand jury indicted Armstrong on one count of possession of a machinegun in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2) (Count 1) and one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 2). *Id.* at *1.[2]

During those proceedings, Armstrong moved to suppress the evidence obtained from the two cellphones pursuant to the state cellphone warrants. *Id.* at *1–2. Magistrate Judge Elizabeth C. Wright recommended suppression, concluding that the warrants lacked probable cause and were overbroad. *Id.* at *1–20. On November 16, 2022, District Judge Donovan W. Frank accepted the recommendation and granted Armstrong's suppression motion. *United States v. Armstrong*, No. 21-cr-228, 2022 WL 16960633, at *3 (D. Minn. Nov. 16, 2022).

---

[2] The 2021 Indictment's forfeiture allegations included firearms, accessories, and ammunition, but not the cellphones. Indictment, *United States v. Armstrong*, 21-cr-228 (D. Minn. Oct. 26, 2021) (Dkt. No. 1).

Notwithstanding the suppression of this evidence, Armstrong was tried and convicted on both counts. Jury Verdict, *United States v. Armstrong*, 21-cr-228 (D. Minn. Feb. 16, 2023) (Dkt. No. 104). The Court sentenced Armstrong to two concurrent 120-month terms, together to run consecutively with a term of 7 months that was imposed in 14-cr-364 for a total term, of 127 months. Sentencing J., *United States v. Armstrong*, 21-cr-228 (D. Minn. June 6, 2023) (Dkt. No. 147).

Armstrong appealed his conviction, which the Eighth Circuit affirmed. *Id.* (Dkt. Nos. 150 171). On April 21, 2025, Armstrong filed a *pro se* motion to vacate his conviction pursuant to 28 U.S.C. § 2255, *id.* (Dkt. No. 174), which the Court denied, Op. and Order 9, *United States v. Armstrong*, 21-cr-228 (D. Minn. Mar. 5, 2026) (Dkt. No. 193). The Court declined to issue a certificate of appealability. Armstrong remains in prison, serving his 127-month sentence.

**III. This RICO Case**

In October 2024, the Government filed the Indictment in this case, charging 11 defendants with participating in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Indictment, Dkt. No. 1. Armstrong was not among the original 11 defendants. *Id.* At some time, the Government identified Armstrong as a suspect in its RICO investigation. Minneapolis Police Sergeant John Biederman, who was assigned as an investigator to the United States Attorney's Office, reviewed MPD and Hennepin County case files that "involved the seizure of a cell phone where the cell phone was later downloaded that we could review." Hr'g Tr. 10, Dkt. No. 789. That review included the two cellphones seized incident to Armstrong's October 2021 arrest. *Id.* at 10–12. In June or July 2025, Sergeant

Biederman reviewed an extraction of the Apple iPhone with property number 182508-1,[3] one of the two cellphones, for "evidence of firearms, possessions, or other related gang activity[.]" *Id.* at 11, 15.[4] He performed this search "after the investigation into Mr. Armstrong's conduct at issue in the RICO indictment related to a suspected homicide had already been completed[,]" as a part "of the final steps to see whether there was any other indicia of gang association that would be relevant for a – an over[t] act allegation in the indictment[.]" *Id.* at 12. Sergeant Biederman found photographs on the iPhone which, according to him, demonstrated Armstrong's gang association. *Id.*

The Government filed its Superseding Indictment in August 2025, adding three defendants to the original 11: Armstrong, Defendant Davant Moore, and Defendant Jahon Lynch. Superseding Indictment, Dkt. No. 313. In Count 1 of the Superseding Indictment, the Government alleges all 14 defendants "were members and associates of the Lows, a criminal organization whose members and associates engaged in acts of violence to include murder, attempted murder, narcotics distribution, robbery, carjacking, and firearms trafficking." *Id.* The Superseding Indictment identifies 93 overt acts allegedly committed in furtherance of the RICO conspiracy. *Id.* ¶ 7. Overt act 12, Armstrong displaying a Lows gang hand sign, is based (at least in part) on one of the photographs Sergeant Biederman found during his 2025 search of the iPhone. Hr'g Tr. 21–25. Of the Superseding Indictment's 22 additional counts, Armstrong is charged in Count 20 with

[3] The parties make little effort to distinguish between the Apple iPhone and the extraction of that iPhone in their briefs. The constitutional relevance of that distinction, if any, is not readily apparent to the Court. Therefore, the Court refers to the iPhone and its extraction collectively as "the iPhone."
[4] It is unclear from the evidentiary hearing whether Sergeant Biederman also searched the other cellphone seized in October 2021. *See generally* Hr'g Tr.

using, carrying, or possessing a firearm in furtherance of a crime of violence resulting in death in violation of 18 U.S.C. §§ 924(c)(1)(A), (1)(1) and (2). Superseding Indictment 37–38.

In February 2026, Armstrong moved to suppress evidence seized from the iPhone along with any "evidence that stemmed from the illegal searches." Dkt. No. 584 at 2. In response, on April 30, 2026, Federal Bureau of Investigation Agent Ashley Boone obtained a federal warrant to search the iPhone. Gov. Ex. J.1. This warrant was presented to and signed by the undersigned.

At an evidentiary hearing on Armstrong's pretrial motions, Sergeant Biederman testified as the sole witness.[5] *See* Hr'g Tr. Sergeant Biederman testified he had been unaware of Judge Frank's suppression order, and if he had known there was a suppression order, "[w]e would not have reviewed the phone . . . [and] likely would have applied for a search warrant to either redownload the phone or look at the extracted data." Hr'g Tr. 10, 17, 32 (testifying that if the defective warrant had never existed "[w]e would have applied for a federal search warrant to extract the phone and review the data"). Sergeant Biederman admitted, however, that the importance to the prosecution team of the evidence he found on the iPhone was one of the reasons Agent Boone applied for the 2026 cellphone warrant. *Id.* at 18.

---

[5] Prior to the evidentiary hearing the Government submitted the 2026 cellphone warrant to the Court marked as Government Exhibit J.1. No exhibits were offered into evidence by either party at the evidentiary hearing.

## ANALYSIS

### I. Motion to Suppress Evidence

Armstrong moves to suppress the contents of the iPhone, claiming the 2025 warrantless search was unlawful. Dkt. Nos. 584, 808. Armstrong also requests the suppression of all evidence stemming from the 2025 warrantless search, arguing that "derivative" evidence is fruit of the poisonous tree. Dkt. No. 584 at 1; Dkt. No. 807 at 14. The Government concedes that it unlawfully searched the iPhone in 2025 without a warrant, but claims that the 2026 cellphone warrant provides a lawful source for the iPhone evidence independent of the unlawful 2025 search. Dkt. No. 820 at 5. Armstrong's motions to suppress raise the following issues: (1) the independent source doctrine; (2) the Government's prolonged seizure of the iPhone (or, as framed by the parties, the Government's "unreasonable delay" in applying for the 2026 search warrant); and (3) fruit of the poisonous tree.[6] The Court addresses each issue in turn.

#### A. Independent Source Doctrine

"A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by way of the violation from a subsequent criminal prosecution." *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014) (quoting *United States v. Barraza–Maldonado,* 732 F.3d 865, 867 (8th Cir. 2013)). This "exclusionary rule enjoins the Government from benefiting from evidence it has unlawfully obtained[.]" *United States v. Crews*, 445 U.S. 463, 475 (1980). Under the independent source doctrine, the exclusionary rule does not apply when the Government demonstrates "that the evidence

[6] Armstrong raises other challenges to the 2026 cellphone warrant. Dkt. No. 808. Because the Court recommends suppressing the iPhone evidence, the Court recommends denying Armstrong's four-corners and *Franks* challenges to the 2026 cellphone warrant as moot.

was acquired through a source independent of the taint." *United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008). Two questions "must be answered in the affirmative for [a] warrant to be an independent source: first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the [supporting] affidavits support probable cause after [any] tainted information has been redacted from them." *Id.* at 614; *see also United States v. Green*, 39 F.4th 510, 513 (8th Cir. 2022) (applying *Swope*'s two prongs). The Government bears the burden of proving both prongs. *See Green*, 39 F.4th at 513 ("To prevail under the independent source doctrine, **the government must show that** . . . .") (emphasis added).

The Government argues that "[i]f a warrant application contains descriptions of evidence recovered during a prior unlawful search, the reviewing court assesses the viability of the warrant by removing from its analysis the tainted information." Dkt. No. 821 at 4 (citing *United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004)). Because "the iPhone search warrant application contains no references to the contents of the phone itself," the Government argues that the search warrant is valid. *Id.* at 5. Thus, according to the Government, the contents of the iPhone have "been obtained from an independent, lawful source and should not be suppressed." Dkt. No. 820 at 7.

The problem with the Government's argument is it only addresses the second prong of the independent source doctrine—probable cause for the warrant. It entirely ignores the first prong—whether the police would have applied for the warrant had they not acquired the tainted information. This is a fact-intensive inquiry. *See e.g.*, *United States v. Brooks*, 715 F.3d 1069, 1075–76 (8th Cir. 2013). The Government's failure to even acknowledge this prong despite Armstrong's clear argument on it, Dkt. No. 808 at

11–13, let alone analyze it or provide citations to the record, means that the Government has failed to meet its burden. *Cf. United States v. Light*, No. 20-cr-147, 2021 WL 1187260, at *2 (D. Minn. Mar. 30, 2021) ("Because [the defendant] did not raise this argument before the Magistrate Judge, it is waived."). It is not this Court's job to research the applicable precedent and comb through the factual record to develop an argument on the Government's behalf. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("The parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present.") (quotations omitted). Nonetheless, to ensure a fulsome record, the Court will analyze the merits of prong one to the best of its ability.

Sergeant Biederman testified that if there had never been a state warrant and the cellphone had been "available" he "would have applied for a federal search warrant to extract the phone and review the data." Hr'g Tr. 32. The Court will not credit this conclusory statement as it lacks the supporting detail courts ordinarily rely upon to apply the independent source doctrine. The Eighth Circuit's decision in *Green* is instructive. *United States v. Green*, 39 F.4th 510, 513 (8th Cir. 2022).[7] There, the Eighth Circuit affirmed a district court's finding that law enforcement would have obtained a federal warrant to search an apartment notwithstanding an unlawful protective sweep where law enforcement saw firearms and narcotics. *Id.* The Eighth Circuit relied on the following evidence to reach this conclusion: (1) a drug-sniffing dog alert; (2) law enforcement surveillance of the defendant; (3) seizure of a package containing marijuana pursuant to a valid state warrant; (4) the contents of the defendant's cellphone; and (5) a criminal

[7] The Eighth Circuit had previously remanded for explicit factual findings on the independent source doctrine. *United States v. Green*, 9 F.4th 682, 687, 693–94 (8th Cir. 2021).

history check. *Id.* at 513. "In light of this information, Sergeant Gentry, who supervised the controlled delivery, testified he would have sought a federal search warrant based on the 'large amount of marijuana' discovered in the package and the 'felon-in-possession-type situation.' The district court's decision to believe Sergeant Gentry was not clearly erroneous." *Id.*

Here, the record lacks the necessary factual context that was present in *Green*. Sergeant Biederman did not explain why Armstrong was being investigated for participating in the alleged RICO conspiracy. Hr'g Tr. 9–10. As for why he searched the iPhone, he claimed that law enforcement "took note of which cases involved the seizure of a cell phone where the cell phone was later downloaded that we could review," *id.*, but did not testify, for example, whether, how, or why the iPhone was important to his investigation. He did not explain why he believed evidence of Armstrong's membership in the Lows would be found on the iPhone. Nor did he testify that the prosecution team had applied for warrants in similar circumstances—when cellphones had been seized during state law enforcement investigations but the scope of the state warrants did not cover the evidence sought in the federal RICO investigation. *United States v. Smith*, No. S1-4:11-cr-288, 2012 WL 1309249, at *10 (E.D. Mo. Mar. 13, 2012), *R. & R. adopted by* 2012 WL 1309463 (E.D. Mo. Apr. 17, 2012) ("[T]he undersigned concludes that the agents would have applied for a warrant to search the bag even had they not opened the bag to confirm that it contained a computer and observed the cell phone in the bag. The best evidence of this is that the agents expeditiously pursued and obtained warrants to search almost everything in this case."). Without the context courts ordinarily rely upon to satisfy the first prong of the independent source doctrine, *see Swope*, 542 F.3d at 615–

16; *United States v. Eggerson*, No. 0:18-cr-110, 2018 WL 6520648, at *6 (D. Minn. Sept. 27, 2018), *R. & R. adopted by* 2018 WL 5962481 (D. Minn. Nov. 14, 2018); *United States v. Slim*, No. 17-cr-50126, 2019 WL 6271803, at *8 (D.S.D. Nov. 25, 2019); *United States v. Suellentrop*, No. 4:17-cr-435, 2018 WL 4693082, at *17–18 (E.D. Mo. July 23, 2018), *R. & R. adopted by* 2018 WL 3829798 (E.D. Mo. Aug. 13, 2018), the Court does not credit Sergeant Biederman's conclusory claim that the Government would have applied for a warrant.

Moreover, Sergeant Biederman testified that he searched the iPhone near the end of the Government's investigation, "after the investigation into Mr. Armstrong's conduct at issue in the RICO indictment related to a suspected homicide had already been completed" as a part of "final steps to see whether there was any other indicia of gang association that would be relevant for . . . an over[t] act allegation[.]" Hr'g Tr. 12. Because the Government had already completed its investigation into the suspected homicide and was merely hunting for additional indicia of gang association, this is not a case where the "[iPhone] and the text messages stored on it [were] crucial pieces of evidence in this case . . . [such that it] is inconceivable that law enforcement would not have eventually sought to search the phone." *United States v. Slim*, No. CR. 17-50126, 2019 WL 6271803, at *8 (D.S.D. Nov. 25, 2019); *see also Eggerson*, 2018 WL 6520648, at *6 ("It is almost beyond dispute that law enforcement would have applied for the April 4th warrant even if they had not begun to review the phone after its seizure. The cell phone of a suspected drug dealer, which has been used to set up controlled buys, is certainly 'highly sought after' evidence.").

The dearth of information regarding why Sergeant Biederman would have sought a warrant stands in stark contrast with Sergeant Biederman's candid admission that the Government applied for the 2026 cellphone warrant in part *because of* the relevant evidence found during the prior unlawful search of the iPhone. Hr'g Tr. 18 ("Q. And the evidence on the phone was important to the investigation; fair? A. I think so. Q. And that's one of the reasons that . . . the prosecuting team[] has applied for a new search warrant, right? A. Correct.").[8] Given that the Government's investigation into Armstrong was mostly wrapped up by the time Sergeant Biederman searched the iPhone, and the absence of an explanation why Sergeant Biederman searched the iPhone, it is entirely plausible that the Government would not have applied for a warrant to search the iPhone absent the unlawful search (i.e., without knowing the importance of the information on the iPhone). And, as previously noted, the Government has provided no contrary analysis of this scant record. The Government has not met its burden to establish the independence of the 2026 cellphone warrant. *See United States v. Gross*, No. 25-CR-4021, 2025 WL 1833818, at *9 (N.D. Iowa July 3, 2025), *R. & R. adopted by* 2025 WL 2058776 (N.D. Iowa July 23, 2025) (granting a motion to suppress because the Government had not met its burden on prong one). The Court recommends Armstrong's motion to suppress

[8] Although the Court finds that the 2026 cellphone warrant was prompted by the unlawful search, the Eighth Circuit has explained that this is not dispositive. *United States v. Swope*, 542 F.3d 609, 615 (8th Cir. 2008) (rejecting "[a] superficial reading of the 'prompted' test [that] would require suppression if the officers' decision to seek the warrant was in fact prompted by what they saw during the prior illegal entry, regardless of whether they would have applied for the warrant had they not made that entry"). This observation underscores the importance of what is absent here—a fully developed factual record and a fulsome analysis—to the determination whether the Government would have obtained a warrant.

evidence found on the iPhone be granted because no exception to the exclusionary rule applies.[9]

### B. Unreasonable Delay

Alternatively, Armstrong argues that the evidence found on the iPhone should be suppressed because the Government unreasonably delayed in applying for a warrant. Dkt. No. 808 at 15–18. According to Armstrong, "[t]he delay between seizure of property and seeking a warrant to search that property is assessed objectively under the totality of the circumstances, and the reviewing Court is to balance the individual's possessory and privacy interests against the government's interests, including the need to retain the property, the complexity of the investigation, the time needed to prepare the warrant, and law enforcement's diligence." *Id.* at 15–16 (citing *United States v. Mays*, 993 F.3d 607, 616–17 (8th Cir. 2021)). Armstrong contends "[t]he government did not appeal the suppression order and knew it was legally binding. Yet it did not return the phone, delete the unlawfully seized data, seek a new warrant after suppression, seek a new warrant after trial or sentencing, or identify any lawful continuing basis to retain the device. It simply kept the phone indefinitely." *Id.* at 16.

The Government counters that "[p]olice lawfully seized the defendant's cell phone incident to arrest" and there is no concern about "evidence becoming stale following delay" because "[t]he subsequent search of the contents of the phone involves an extraction of the phone[.]" Dkt. No. 821 at 7. The Government also argues that "[g]iven

[9] Having recommended suppression, the Court does not reach the second prong—probable cause—of the independent source doctrine.

the complexity of the investigation at issue, the delay in obtaining the federal search warrant was not unreasonable." *Id.* at 6.

The parties agree (correctly) that a warrantless seizure reasonable at its inception may become unreasonable when the Government unduly delays in applying for a warrant. *Mays*, 993 F.3d at 616. Courts "demand expediency in obtaining a search warrant to search seized evidence in order to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable." *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir. 2015); *see also United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020) ("The right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that the police will act with diligence to apply for the warrant."). There is no bright-line rule for determining when such a delay becomes unreasonable. *Mays*, 993 F.3d at 616 (citing *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)). Rather, courts balance the property-owner's possessory and privacy-related interests against law-enforcement-related concerns to determine the reasonableness of any delay between the time an item is seized and a warrant to search is sought. *Id.* at 617 (summarizing the relevant considerations).

The parties fail to recognize the nuance of this issue. In order to provide structure to the issue and make this Court's analysis transparent it is helpful to begin by walking through each consequential step in the Fourth Amendment process as applied to Armstrong. Police arrested Armstrong in 2021. That is a seizure under the Fourth Amendment. In this case, no one argues it was unlawful. So far so good. Police seized

the iPhone incident to that arrest. That is also a Fourth Amendment seizure. Again, seizing Armstrong's phone incident to Armstrong's lawful arrest comports with the Fourth Amendment. No one argues to the contrary.

Now the MPD has Armstrong's iPhone. No one asserts that the phone has independent evidentiary value. What matters is what is on the phone. If the content of the phone has evidentiary value, the Government may continue to retain it. Enter the unreasonable delay doctrine. In order to justify the continued retention of the phone (i.e. its continued seizure) the police must promptly obtain a warrant and search it. If they unreasonably delay in searching the phone, its continued seizure—even though initially properly seized—becomes a violation of the Fourth Amendment's prohibition on unreasonable seizures.

Here, police timely obtained a state court warrant to search the iPhone in 2021. No one has argued unreasonable delay in obtaining that warrant or executing that search. This search yielded content of evidentiary value in the original prosecution of Armstrong in 21-cr-228. It was therefore not a violation of the Fourth Amendment for law enforcement to keep the phone. Until it was.

The federal court determined that the 2021 search was unconstitutional because the warrant was invalid and suppressed the evidence on it that was seized. There the phone (and the evidence) sat until 2025. At that time Sergeant Beiderman reviewed the iPhone's extraction file. This is a search for which he did not have a warrant and it was thus unlawful. Finally, in 2026, the Government, recognizing the improperly-seized evidence was valuable to this case (but that it had no warrant) obtained one.

How do these facts drive the Fourth Amendment analysis? Does the fact that the initial warrant was timely immunize the Government from any unreasonable delay claim as the Government's brief implies? Stated otherwise, is the Government immune from a claim of unreasonable delay even though that timely warrant was eventually tossed out? If not, how is the question of unreasonable delay to be measured? Does the clock restart once the 2021 warrant is tossed out? Is the time before that warrant is tossed out tolled such that it is excluded from any computation of delay? Or, alternatively, does the fact that the warrant was determined to be invalid relate back to the initial seizure such that the initial seizure becomes retroactively invalid or that the delay is measured from the time of initial seizure forward? Does the fact that the intervening 2025 search was warrantless somehow make any delay thereafter per se unreasonable? Or does it shorten the period of delay that would otherwise be considered reasonable? On these critical issues the parties' briefs are silent. So, once again, the Court finds itself in the position of delving into complex issues with no input from the parties. [10] To complicate matters, there is relatively little precedent to guide the Court and much of what does exist is, in this Court's view, analytically muddled.

In the absence of authority directly on point, the best approach is a return to core Fourth Amendment principles. The unreasonable delay doctrine is derived from a straightforward Fourth Amendment rule: "[a] seizure reasonable at its inception because [it is] based upon probable cause may become unreasonable as a result of its duration[.]" *United States v. Mays*, 993 F.3d 607, 616 (8th Cir. 2021) (quoting *Segura v. United*

---

[10] This is not the first time the Court has received inadequate briefing *on this issue*. *See* Dkt. No. 692 at 15–21.

*States*, 468 U.S. 796, 812 (1984)). Once the state warrant was suppressed, the warrant—and the information found from executing that warrant—could no longer justify the iPhone's continued retention. Stated otherwise, the defective state warrant was no longer of any consequence. That meant the iPhone was once again retained by law enforcement pursuant to the original warrantless seizure. It follows that the Government was required, for a second time, to promptly apply for a warrant or supply an alternative, legitimate basis for its continued seizure of the phone.[11] From there, the reasonableness of the continued warrantless seizure "is measured in objective terms by examining the totality of the circumstances." *United States v. Mays*, 993 F.3d 607, 617 (8th Cir. 2021) (quoting source omitted).

This approach is certainly consistent with circuits that have held the Fourth Amendment requires the "continuing retention of seized property to be reasonable." *Asinor v. D.C.*, 111 F.4th 1249, 1261 (D.C. Cir. 2024); *Honda Lease Tr. v. Malanga's Auto.*, 152 F.4th 477, 489 (3d Cir. 2025) ("We thus hold that when the government seizes property, the Fourth Amendment requires that its initial seizure and continued retention be reasonable."); *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) ("A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new

[11] For example, the continued warrantless seizure of the iPhone could be reasonable if the iPhone had independent evidentiary value. That was not the case here. It also seems reasonable, however, that the time period while the Government is acting under the guise of an apparently valid warrant, should not count against it in the delay analysis. Rather, it would seem that the delay clock would start anew once the motion to suppress was granted. What is less clear is whether the clock runs faster in light of that suppression and its attendant period of retroactively invalid possession. Ultimately, however, in this case it does not matter whether the delay clock is ticking faster.

justification."); *Mom's Inc. v. Willman*, 109 F. App'x 629, 637 (4th Cir. 2004) ("The Fourth Amendment regulates all such interference, and not merely the initial acquisition of possession."). According to those circuits, the Fourth Amendment's guarantee against unreasonable seizures governs not only the initial moment the Government takes possession of property, but also "the entire duration of the government's possession of the property." *Asinor*, 111 F.4th at 1252. That includes both seizures by warrant, *Richman v. United States*, 350 F.R.D. 401, 405 (D.D.C. 2025) (applying *Asinor* to digital files seized by warrant but retained after the competition of the Government's investigation), and warrantless seizures, *Asinor*, 111 F.4th at 1251–52 (finding that the Government's prolonged retention of personal effects, including cellphones, seized incident to arrests implicated the Fourth Amendment).

Other circuits have drawn a line between *acquisition* and *retention* of personal property.[12] For example, as the Seventh Circuit has held, "[o]nce an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable. The amendment then cannot be invoked by the dispossessed owner to regain his property." *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003); *see also Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999) ("Put another way, the Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property. . . . Once that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies."). *Cf. Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017)

[12] The Eighth Circuit has not meaningfully weighed in on this debate. *Gilmore v. City of Minneapolis*, 837 F.3d 827, 838 (8th Cir. 2016); *Ali v. Ramsdell*, 423 F.3d 810, 814 (8th Cir. 2005).

("On such a record, we are offered no reason to disagree with our sister circuits that, to the extent a plaintiff may challenge on federal constitutional grounds the government's retention of personal property after a lawful initial seizure in circumstances such as these, that challenge sounds in the Fifth Amendment rather than in the Fourth Amendment."); *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of legally seized property raises an issue of procedural due process under the Fourteenth Amendment[.]"); *Snider v. Lincoln Cnty. Bd. of Cnty. Comm'rs*, 313 F. App'x 85, 93 (10th Cir. 2008) ("In a similar factual context, involving both the seizure and detention of personal property, we analyzed the propriety of the initial seizure by police under the Fourth Amendment, but held that the ultimate disposition of the property had to comply with the protections of procedural due process."); *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) ("Where, as in this case, an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure."). In other words, those circuits have held that only the Government's acquisition of personal property is a seizure for purposes of the Fourth Amendment. *See Novak v. Federspiel*, 140 F.4th 815, 824 (6th Cir. 2025) ("[T]he Fourth Amendment does not apply to *retaining* property[.]").

Although at first glance this acquisition / retention distinction could be seen to foreclose Armstrong's unreasonable delay argument here, this is not so. Despite drawing that distinction, the Sixth and Seventh Circuits—the circuits to most forcefully reject the application of the Fourth Amendment to the prolonged retention of personal effects—both recognize that "the duration of the seizure pending the issuance of a search warrant must

still be reasonable." *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993); *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012) ("Even a permissible warrantless seizure, such as the initial seizure here, must comply with the Fourth Amendment's reasonableness requirement. Thus, the Supreme Court has held that after seizing an item, police must obtain a search warrant within a reasonable period of time."). The Seventh Circuit has attempted to reconcile the unreasonable delay doctrine with its holding in *Lee* as follows:

> We reject the notion that anything in this court's opinion in *Lee v. City of Chicago,* 330 F.3d 456 (7th Cir. 2003), undermined *Segura*'s holding. In *Lee* we held that an individual cannot challenge the police's continued retention of his vehicle for failure to pay impound fees on Fourth Amendment grounds; he could only challenge the initial seizure. *See* 330 F.3d at 465–66. Here, in contrast, the police needed within a reasonable time to obtain a warrant before they could undertake a new search and seizure—that of the contents of the cell phone. This is the essence of Burgard's complaint, not the retention point that was central to *Lee.* See *United States v. Martin,* 157 F.3d 46, 54 (2d Cir.1998) ("[W]here officers have probable cause to believe [a] container contains contraband, it 'may be seized, *at least temporarily,* without a warrant.'") (quoting in parenthetical *United States v. Jacobsen,* 466 U.S. 109, 121, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). No other recognized exception to the warrant requirement covered the police detention of the contents of Burgard's phone.

*Burgard*, 675 F.3d at 1032. The line being drawn by the Seventh Circuit appears to be that a temporary, warrantless seizure of a container (including cellphones) is a continuing seizure for purposes of the Fourth Amendment, but other seizures—e.g., by warrant—are not continuing.[13] Thus, when a cellphone is searched and seized pursuant to warrant, the Seventh Circuit would say that the Fourth Amendment's guarantee against

[13] The textual, historical, and precedential basis for this distinction is not expressly stated.

unreasonable seizures does not apply to the Government's prolonged retention of the cellphone. But even under this precedent, it would nonetheless make sense that, once the underlying warrant is tossed out, the Government's justification to retain the cellphone reverts back to the original, temporary, warrantless seizure. The Government, for its part, concedes that the unreasonable delay doctrine applies to the circumstances of this case by failing to argue to the contrary. *See United States v. Light*, No. 20-cr-147, 2021 WL 1187260, at *2 (D. Minn. Mar. 30, 2021) (waiver). In sum, even if this Court were to apply the Sixth and Seventh Circuit test distinguishing between an initial seizure and a continuing retention, the reasonableness of the Government's delay in obtaining a (valid) search warrant would be in play.

The next step then is to apply *Mays*'s totality of the circumstances test to the facts of this case. Factors to consider include: (1) the duration of the delay; (2) the nature of the seized property; (3) the significance of the interference with the person's possessory interest; (4) the Government's legitimate interest in holding the property as evidence; (5) the nature and complexity of the investigation; (6) the quality of the warrant application; and (7) any other evidence relating to law enforcement's diligence in obtaining the warrant. *United States v. Mays*, 993 F.3d 607, 616–17 (8th Cir. 2021).

The Eighth Circuit has described even "fifteen days is a considerable period[.]" *Mays*, 993 F.3d at 617; *see also United States v. Fife*, 356 F. Supp. 3d 790, 796–806 (N.D. Iowa 2019) (finding a six-month delay to be unreasonable). In this case, more than three years passed between the November 2022 suppression order and the April 2026 cellphone warrant. Regardless of precisely how the period of delay is measured, it was far too long in this case. *See United States v. Escobar*, No. 15-cr-260, 2016 WL 3676176,

at *5 (D. Minn. July 7, 2016) (describing an eight-month delay as "far longer than any court has held reasonable under any circumstances").

A cellphone, "like a computer, contains highly personal information." *Id.* at *5; *see also Riley v. California*, 573 U.S. 373, 393–97 (2014) (describing the unique privacy concerns implicated by modern cellphones). Therefore, the personal and important nature of the seized property weighs heavily in Armstrong's favor. *See Mays*, 993 F.3d at 617 (reaching this conclusion as to a laptop).

The significance of the interference weighs in the Government's favor. First, because Armstrong was in custody throughout the duration of the Government's seizure, *United States v. Musquiz*, No. 4:18CR3116, 2019 WL 3084944 (D. Neb. June 27, 2019), *R. & R. adopted by* 2019 WL 3082498 (D. Neb. July 15, 2019) ("Musquiz was in custody. He was therefore unable to possess and use his cellphone during that time."), and second because Armstrong did not request the return of his cellphone, *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) ("[I]t can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned.").[14]

There is no reason to believe the iPhone had independent evidentiary value. Therefore, the sole evidentiary basis for retaining the iPhone was its contents. That interest evaporated with Armstrong's February 2023 conviction in 21-cr-228. The Government only identified the iPhone as potentially holding relevant information to this RICO case in June 2025. Therefore, the Government held the iPhone for 28 months with

[14] At the very least, Armstrong has not claimed that he requested the return of his cellphone or otherwise checked on its status. *See* Dkt. No. 808.

no legitimate interest in holding it as evidence. Once the evidence seized from the phone was suppressed the Government's interest in retaining it for the 2021 indictment evaporated. This factor favors Armstrong.

The remaining factors relate to the Government's diligence in applying for a warrant. There is no evidence that state or federal law enforcement sought to apply for a second warrant relating to 21-cr-228. Instead, Agent Boone only sought to apply for a warrant in response to Armstrong's 2026 motion to suppress in this case. Because law enforcement held the iPhone for more than three years without seeking a warrant, the Government plainly failed to "diligently pursue[] their investigation." *Burgard*, 675 F.3d at 1033. The Government counters that the complexity of this RICO case justifies law enforcement's delay in applying for a warrant. Dkt. No. 821 at 6–7. Not so. Complexity is only relevant when it is the complexity of the investigation that causes the delay in applying for a warrant. *United States v. Laist*, 702 F.3d 608, 617 (11th Cir. 2012) ("An investigation of this scope and complexity requires more time to prepare a warrant."); *see also Mays*, 993 F.3d at 617–18. Because there is no evidence or reason to believe the Government was diligently drafting a warrant application during the years Armstrong's iPhone was sitting in police custody, the complexity of the RICO investigation is beside the point. These factors weigh heavily in Armstrong's favor.

The totality of circumstances have demonstrated the Government's prolonged seizure of the iPhone was unreasonable.[15] "When an unreasonable search or seizure

[15] There are, no doubt, added complexities applying the unreasonable delay doctrine to cases where the underlying search warrant has been tossed out. But where, as here, the Government's seizure of the iPhone was so prolonged and it has made no effort to justify its delay, Dkt. No. 821 at 6–7, the Court need not delve any further than it has.

yields incriminating evidence, the exclusionary rule, 'when applicable, forbids the use of' such 'improperly obtained evidence at trial.'" *United States v. Conley*, 69 F.4th 519, 522 (8th Cir. 2023) (quoting *Herring v. United States*, 555 U.S. 135, 139 (2009)); *see also United States v. Fife*, 356 F. Supp. 3d 790, 806–07 (N.D. Iowa 2019) (applying the exclusionary rule when law enforcement agents violated the defendant's Fourth Amendment rights by unreasonably delaying applying for a search warrant). Therefore, the Court alternatively recommends granting Armstrong's motion to suppress the iPhone evidence because, under the unreasonable delay doctrine, the evidence was the product of an unlawful seizure.

### C. Fruit of the Poisonous Tree

Armstrong requests the suppression of "all evidence obtained, developed, or incorporated into the Armstrong investigation after the June 2025 review of the suppressed phone evidence" as fruit of the poisonous tree. Dkt. No. 807 at 14. "Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *United States v. Simpson*, 439 F.3d 490, 494 (8th Cir. 2006) (quoting *Hamilton v. Nix,* 809 F.2d 463, 465 (8th Cir.1987)). "Evidence should only be excluded if the 'illegality is at least a but-for cause of obtaining the evidence.'" *United States v. McManaman*, 673 F.3d 841, 849 (8th Cir. 2012) (quoting *United States v. Olivera–Mendez,* 484 F.3d 505, 511 (8th Cir. 2007)). "When the issue is whether challenged evidence is the fruit of a Fourth Amendment violation, the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." *United States v. Marasco*, 487 F.3d 543, 547

(8th Cir. 2007); *see also United States v. Crutchfield*, No. 22-cr-269, 2023 WL 3868710, at *6 (D. Minn. Mar. 21, 2023), *R. & R. adopted by* 2023 WL 3317992 (D. Minn. May 9, 2023) (applying this burden-shifting framework).

Armstrong argues that he "has met his initial burden to show a nexus between the Fourth Amendment violation and the challenged evidence" because "[t]he government's own witness testified that the suppressed phone extraction was reviewed for the precise types of information relevant to a RICO charge premised on enterprise membership and association." Dkt. No. 807 at 11 n.4. According to Armstrong, Sergeant Biederman's confirmation that overt act 12 is based on a photograph from the iPhone "triggers the government['s] burden to prove that its remaining evidence came from wholly independent sources." *Id.* Armstrong's conclusion does not follow from his premise. It is Armstrong's burden to challenge specific evidence and demonstrate a factual nexus between the constitutional violation and that evidence. *See, e.g.*, *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007) (finding that the criminal defendant could not "satisfy her burden of establishing the causal nexus between the illegal search of her purse and her statements"). Armstrong has not even identified specific, challenged evidence, let alone demonstrated a factual nexus between the unlawful search and that evidence. Because binding precedent forecloses Armstrong's effort to shift his burden onto the Government, the Court recommends Armstrong's request to suppress additional evidence as fruit of the poisonous tree be denied.

## II. Motions to Dismiss

### A. First Amendment

Armstrong moves to dismiss Count 1, claiming that the Superseding Indictment "violates the First Amendment by criminalizing expressive conduct[.]" Dkt. No. 582; Dkt. No. 538 at 8. For support, he cites *United States v. Stevens*, 559 U.S. 460 (2010), and *Texas v. Johnson*, 491 U.S. 397 (U.S. 1989). The problem for Armstrong is that those cases involved statutes nothing like 18 U.S.C. § 1962(d). In *Stevens*, 18 U.S.C. § 48 criminalized "the commercial creation, sale, or possession of certain depictions of animal cruelty," a proscription that "explicitly regulate[d] expression based on content[.]" *Stevens*, 559 U.S. at 464, 468. *Johnson* involved flag desecration in violation of a Texas law proscribing the desecration of venerated objects. 491 U.S. at 400 n.1. By contrast, § 1962(d) prohibits conspiracies to participate in the affairs of a RICO enterprise through a pattern of racketeering activity. Thus, unlike the animal cruelty and desecration of venerated object statutes, "[t]he only speech activity that the RICO statute incidentally prohibits is speech that occurs in furtherance of racketeering activity." *United States v. Bondarenko*, No. 217CR306, 2019 WL 2450923, at *11 (D. Nev. June 12, 2019).

There is also an important distinction between the conduct proscribed by a statute and overt acts alleged to be in furtherance of a conspiracy. As the Seventh Circuit has explained, "constitutionally protected speech may nevertheless be an overt act in a conspiracy charge." *United States v. Donner*, 497 F.2d 184, 192 (7th Cir. 1974) (citing *United States ex rel. Epton v. Nenna*, 446 F.2d 363, 368 (2d Cir. 1971)); *see also United States v. Vascular Sols., Inc.*, 181 F. Supp. 3d 342, 345 (W.D. Tex. 2016) (collecting

cases). Armstrong does not offer, and the Court's research has not uncovered, any authority to the contrary.

Armstrong's reliance on *Dawson v. Delaware* fares no better. 503 U.S. 159 (1992). In *Dawson*, the Court held that "Dawson's First Amendment rights were violated by the admission of the Aryan Brotherhood evidence in this case, because the evidence proved nothing more than Dawson's abstract beliefs." *Id.* at 167. But *Dawson* did "not hold that the First Amendment precludes the use of public speech, or the fact of a defendant's association with a criminal enterprise, as evidence in a criminal proceeding." *United States v. Graham*, 293 F. Supp. 3d 732, 738 (E.D. Mich. 2017) (finding that rap tracks were admissible evidence to show a criminal defendant's membership in a gang). Simply put, it does not violate the First Amendment for the Government to introduce evidence of gang signs "to establish the existence of, and [Armstrong's] participation in, the alleged RICO enterprise." *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (reaching this conclusion as to rap tracks). The Court recommends denying Armstrong's request to dismiss Count 1 as a violation of the First Amendment.

### B. Void for Vagueness

Armstrong challenges the RICO statute as unconstitutionally vague as applied. Dkt. No. 582. The Court has already recommended denying several such as-applied void-for-vagueness challenge as premature. Dkt. No. 631 at 2–3. Incorporating that prior analysis by reference, the Court makes the same recommendation here.

### C. Vindictive Prosecution

Armstrong moves to dismiss the Superseding Indictment for vindictive prosecution. Dkt. No. 582. The vindictive prosecution of a criminal defendant violates that defendant's

Fifth Amendment due process rights. *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015). "Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." *Id.* To prove prosecutorial vindictiveness, a criminal defendant has the burden to demonstrate that the "prosecution was brought in order to punish [him] for the exercise of a legal right." *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004). This "evidentiary burden is a heavy one, and [courts] are mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes." *Id.*

A defendant can establish prosecutorial vindictiveness in two ways. First, with "objective evidence of the prosecutor's vindictive or improper motive[.]" *United States v. Chappell,* 779 F.3d 872, 879 (8th Cir. 2015). Second, "a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *Id.*

Armstrong offers no objective evidence of vindictive or improper motive. Instead, he claims that "[t]he sequence of events in this case supports a presumption of vindictiveness." Dkt. No. 583 at 13. For support, Armstrong points to his April 2025 *pro se* motion to vacate his conviction in Case No. 21-cr-228, and the August 2025 Superseding Indictment joining him as a defendant in this RICO case. *Id.* at 13–14. According to Armstrong, "[t]he close temporal proximity between Mr. Armstrong's exercise of his post-conviction rights and the government's decision to indict him in this separate case supports an inference of retaliatory motivation." *Id.* at 14. This argument lacks merit.

The Eighth Circuit has repeatedly rejected assertions of timing alone as sufficient to establish a presumption of vindictiveness. *United States v. Chappell*, 779 F.3d 872,

881 (8th Cir. 2015); *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) ("[T]iming alone is insufficient to trigger the presumption of vindictiveness."); *United States v. Campbell*, 410 F.3d 456, 462 (8th Cir. 2005) ("A presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness."). Absent additional evidence or context, this binding precedent squarely forecloses Armstrong's temporal argument. Moreover, motions to vacate convictions pursuant to § 2255 are frequently filed by defendants sentenced in federal court. They are also quite often denied. There is no reason to believe the Government retaliates as a matter of course against criminal defendants who file such motions and Armstrong has not explained why the Government would have retaliated against him for filing his motion to vacate that was, unsurprisingly, denied. Op. and Order, *United States v. Armstrong*, 21-cr-228 (D. Minn. Mar. 5, 2026) (Dkt. No. 193). Armstrong's temporal argument is not close to establishing a presumption of vindictiveness. The Court recommends denying Armstrong's motion to dismiss for vindictive prosecution.

**D. Double Jeopardy**

Armstrong argues that Counts 1 and 20 are barred by the Double Jeopardy Clause. Dkt. Nos. 582, 583 at 15–16. According to Armstrong, "[t]he acts attributed to [him] in this case overlap markedly with the prior prosecutions. This prosecution overlaps with an earlier prosecution as to location, time period, type of allegation, and evidence." Dkt. No. 583 at 16. Therefore, Armstrong claims, "[t]hese are duplicative charges" that "must be dismissed pursuant to the Double Jeopardy Clause." *Id.*

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. This Clause "prohibits the imposition of 'multiple punishments for the same criminal offense.'" *United States v. Harvey*, 829 F.3d 586, 590 (8th Cir. 2016) (quoting *United States v. Hill*, 750 F.3d 982, 987 (8th Cir. 2014)). "If the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *United States v. Harvey*, 829 F.3d 586, 590 (8th Cir. 2016) (applying *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "The defendant bears the initial burden of showing a non-frivolous claim of double jeopardy." *United States v. Bennett*, 44 F.3d 1364, 1368 (8th Cir. 1995).

There are readily apparent problems with Armstrong's motion. First, he fails to identify any same acts or transactions constituting a violation of two distinct statutory provisions. *See* Dkt. No. 583 at 15–16. This is a threshold matter that Armstrong's motion fails to address with any degree of clarity. *See, e.g.*, *United States v. Kuhnel*, 25 F.4th 559, 566 (8th Cir. 2022) (concluding that "[t]he possession of multiple child pornography images on the same laptop constituted a single criminal act"). Second, he fails to apply the *Blockburger* test. Even a cursory review of the elements reveals that his 2023 convictions—possession of a machinegun and felon in possession of a firearm—are distinct from the charges here, RICO conspiracy and using, carrying, or possessing a firearm in furtherance of a crime of violence resulting in death. *Compare* Eighth Circuit Manual of Model Jury Instructions (Criminal) § 6.18.1962B (2024) (RICO conspiracy), and *id.* § 6.18.924C-1 (possessing a firearm in furtherance of a crime of violence), C-2 (using

or carrying a firearm in furtherance of a crime of violence), *with id.* § 6.18.922A (felon in possession of a firearm), and *United States v. Smith*, 508 F.3d 861, 866 n.3 (8th Cir. 2007) (elements for possession of a machine gun).[16] The same is true for Armstrong's 2015 guilty plea for conspiracy to violate § 922(g)(1). *Compare* Eighth Circuit Manual of Model Jury Instructions (Criminal) § 6.18.1962B (2024) (RICO conspiracy), *with id.* § 6.18.922A (felon in possession of a firearm), and *Ocasio v. United States*, 578 U.S. 282, 287–88 (2016) (summarizing the requirements of the general federal conspiracy statute).

Although not entirely clear, Armstrong might be relying on the Eighth Circuit's totality-of-the-circumstances test to argue that the felon-in-possession conspiracy to which he pleaded guilty in 2015, and the RICO conspiracy charged in the Superseding Indictment, are really one and the same. *See* Dkt. No. 583 at 16. It is true that "[i]n determining whether separately-charged conspiracies are really a single conspiracy, [the Eighth Circuit] applies a 'totality of the circumstances' test." *United States v. Pierre*, 795 F.3d 847, 849–50 (8th Cir. 2015) (quoting *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir. 1985)). But that test only applies when successive criminal charges involve the *same* conspiracy statute. *United States v. Bennett*, 44 F.3d 1364, 1372 (8th Cir. 1995). By contrast, "where a single conspiracy is alleged to have violated separate and distinct criminal statutes, the totality of the circumstances test does not govern the double

[16] Even if the Government claimed (and attempted to prove at trial) that Armstrong's prior convictions were predicate acts to the RICO conspiracy—something that is not alleged in the Superseding Indictment nor an argument expressly raised by Armstrong—"a RICO violation is a discrete offense that can be prosecuted separately from its underlying predicate offenses[.]" *United States v. Kehoe*, 310 F.3d 579, 588 (8th Cir. 2002).

jeopardy inquiry." *Id.* Accordingly, any reliance on the totality of the circumstances test is unfounded.

Perhaps Armstrong is claiming that the Government's reliance on the same evidence for prior prosecutions and this RICO case violates the Double Jeopardy Clause. If so, Eighth Circuit precedent likewise forecloses this argument: "There is no 'same-evidence' test to prohibit the government from using the same evidence to prove two different offenses. Even *Grady*'s same-conduct test (now overruled) did not amount to a same-evidence test." *United States v. Rodgers*, 18 F.3d 1425, 1429 (8th Cir. 1994). In sum, regardless of the precise nature of Armstrong's amorphous double jeopardy argument, it fails. The Court recommends denying Armstrong's motion to dismiss pursuant to the Double Jeopardy Clause.[17]

### E. Selective Prosecution

Armstrong joins Defendant Victor Collins's motion to dismiss for selective prosecution. Dkt. No. 582; Dkt. No. 583 at 17. The Court previously recommended denying Collins's selective-prosecution motion. Dkt. No. 631 at 4–6. Incorporating that prior analysis by reference, the Court likewise recommends denying Armstrong's selective-prosecution motion.

### F. Failure to State an Offense

Armstrong moves to dismiss for failure to state a claim, Dkt. No. 582, joining the motion to dismiss filed by Defendant Davant Moore, Dkt. No. 583 at 12–13. The Court

[17] The Eighth Circuit has "previously directed district courts to make a written finding as to whether such claims are frivolous or colorable." *United States v. Aguilera*, 179 F.3d 604, 608 (8th Cir. 1999). The Court finds Armstrong's double jeopardy claims to be frivolous.

has recommended denying Moore's motion to dismiss for failure to state an offense, Dkt. No. 817, and recommends the same here.

### G. Fruit of the Poisonous Tree

Finally, Armstrong argues that the Superseding Indictment must be dismissed as fruit of the poisonous tree. Dkt. No. 810. Because "[t]he government has reviewed suppressed evidence, placed it into the investigative and charging stream, presented it to the grand jury, [and] incorporated it into the Superseding Indictment as Overt Act 12," Armstrong claims even "[i]f the Court suppresses the phone evidence, the indictment still remains infected by the government's current use of that evidence." *Id.* at 2–3. Stated otherwise, Armstrong is arguing that the charges against him are fruit of the poisonous tree and this requires dismissal.

Armstrong does not offer, and the Court has not found, any authority to support the proposition that an indictment can be "tainted" because unlawfully obtained evidence was considered by the grand jury. This is not surprising; "[u]nder the fruit of the poisonous tree' doctrine, the exclusionary rule bars the **admission of physical evidence and live witness testimony** obtained directly or indirectly through the exploitation of police illegality." *United States v. Simpson*, 439 F.3d 490, 493 (8th Cir. 2006) (citation modified). The suppression of the iPhone evidence is the only remedy to which Armstrong is entitled for the Government's 2025 unlawful search. The Court recommends denying his request to dismiss of the Superseding Indictment as fruit of the poisonous tree.

## III. Motion for Severance

Armstrong moves for a separate trial from his codefendants pursuant to Federal Rule of Criminal Procedure 14(a). Dkt. No. 585. Rule 14(a) provides that "[i]f the joinder

of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Despite the authority vested by Rule 14(a), "there is a strong presumption against severing trials." *United States v. Kramer*, 768 F.3d 766, 770 (8th Cir. 2014). That is because "[t]rying codefendants together not only conserves scarce time and resources, but also 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (quoting *United States v. Darden*, 70 F.3d 1507, 1528 (8th Cir. 1995)). "The district court must balance the interests of judicial economy against the risk of prejudice when deciding whether to grant a motion to sever." *United States v. Wetsch*, No. 12-cr-45, 2013 WL 1490222, at *3 (D. Minn. Apr. 10, 2013). A defendant may show a serious risk of prejudice by demonstrating that his defense is incompatible with a codefendant's defense, or that the jury will be unable to properly compartmentalize the evidence. *United States v. Weckman*, 982 F.3d 1167, 1172–73 (8th Cir. 2020).

Armstrong's arguments are familiar. He claims the jury will be unable to compartmentalize the evidence because the "[G]overnment intends to introduce extensive evidence of gang-related murders, violent assaults, and large-scale narcotics distribution—almost none of which is tied to Mr. Armstrong." Dkt. No. 585 at 2. He also warns that "prejudice can arise when a jury is exposed to a disproportionate volume of evidence against one defendant compared to another." *Id.* The Court has already denied motions for severance filed by Armstrong's codefendants based on this same line of attack. Dkt. No. 630 at 9–11; Dkt. No. 665 at 4–7; Dkt. No. 693 at 43–46. Armstrong offers

no compelling reason for a different outcome here, and the Court incorporates its prior analysis by reference. Armstrong's motion for severance is denied.

## IV. Motion for Bill of Particulars

Armstrong requests a bill of particulars under Federal Rule of Criminal Procedure 7(f). Dkt. No. 586. Rule 7(f) permits a defendant to move for a bill of particulars if the defendant "believes that an indictment does not provide enough information to prepare a defense." *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009). A bill of particulars has greater precision than an indictment and provides clarity when an indictment is too vague and indefinite. *United States v. Hernandez*, 299 F.3d 984, 989–90 (8th Cir. 2002). A bill of particulars should not be compelled unless the indictment inadequately informs Defendants of the nature of the charges against them. *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir. 1993). "A bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." *United States v. Lundstrom*, 880 F.3d 423, 439 (8th Cir. 2018). Courts have broad discretion whether to grant or deny a bill of particulars. *United States v. Stephenson*, 924 F.2d 753, 762 (8th Cir. 1991).

The Superseding Indictment adequately informs Armstrong as to the charges against him, including the factual basis for Count 1. *See* Supra, Part II.F. Moreover, the Government's voluminous discovery cuts against any concerns of unfair surprise. *United States v. Milk*, 66 F.4th 1121, 1133 (8th Cir. 2023) (noting the relevance of discovery to a defendant's ability to prepare a defense); *United States v. Edwards*, No. 07-cr-297, 2008 WL 11295898, at *4 (D. Minn. June 13, 2008) (same). Because the Superseding

Indictment provides sufficient detail for Armstrong to prepare a defense, the Court denies his motion for a bill of particulars.

## V. Discovery Motions

### A. Confidential Informants

Armstrong requests the Government disclose "the identity of any informant or cooperating witness who was a material witness to the conduct charged in the Superseding Indictment **by no later than thirty days before trial rather than the Court's initial deadline of ten days.**" Dkt. No. 587 at 1. The Government responds that ten days is appropriate because of "the uniquely sensitive nature of informant identities and the real risk of potential witness tampering or intimidation in cases such as this." Dkt. No. 716 at 2. Consistent with its prior orders, Dkt. Nos. 818 at 43, 840 at 24–25, the Court orders the Government to disclose the identity of any informant who was a material witness to the charged conduct and make any such informant available to Carter no later than 30 days before his trial.

### B. Gang Intelligence

Armstrong requests an order "compelling the government to disclose gang intelligence files and investigative materials concerning the 'Lows' gang, any and all data referring to the 'Stick Up Boys' gang, and any information addressing the relationship, overlap, or distinction between the two." Dkt. No. 588 at 1. The Court has already considered and rejected a similar request for the disclosure of "Gang Intelligence Data and Gang Investigative Data." Dkt. No. 693 at 48–51. The Court incorporates its prior analysis by reference and denies Armstrong's discovery motion.

### C. Police Personnel Files

Armstrong joins Defendant Shannon Jackson's motion for the disclosure of police personnel files. Dkt. No. 589. Having already denied the underlying motion, *see* Dkt. No. 693, Armstrong's motion is likewise denied.

### D. Post-Conspiracy Statements

Armstrong moves for the disclosure of post-conspiracy statements pursuant to Federal Rule of Criminal Procedure 16(c) and *Bruton v. United States*, 391 U.S. 123 (1968). Dkt. No. 590. The Court has already considered and rejected an essentially identical discovery motion. Dkt. No. 693 at 52–53. The same result follows here.

### E. Grand Jury Transcripts

Armstrong requests the disclosure of grand jury materials to support his vindictive prosecution motion. Dkt. No. 583 at n.5. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) authorizes the disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Courts only authorize disclosure under this rule when the defendant shows a "particularized need." *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994). Having rejected Armstrong's vindictive prosecution motion as baseless, supra, Part II.C, those same arguments fail to satisfy the particularized need standard; speculation that there might be a defect in the grand jury process is not enough. *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994); *see also United States v. Nance*, No. 8:25-cr-20, 2026 WL 719092, at *4 (D. Neb. Feb. 6, 2026), *R. & R. adopted by* 2026 WL 523327 (D. Neb. Feb. 25, 2026) ("[The defendant] only speculates that the grand jury heard false or misleading evidence[.]").

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1. Armstrong's Motion to Compel Earlier Disclosure of Material Informants and Witnesses (Dkt. No. 587) is **GRANTED** as follows: the Government shall disclose the identity of any informant who was a material witness to the charged conduct and make any such informant available to Armstrong no later than 30 days before his trial.

2. Armstrong's Motion to Sever Defendants (Dkt. No. 585) is **DENIED**;

3. Armstrong's Motion for Bill of Particulars (Dkt. No. 586) is **DENIED**;

4. Armstrong's Motion to Compel Disclosure of Gang Intelligence Files and Related Investigative Information (Dkt. No. 588) is **DENIED**;

5. Armstrong's Motion to Compel Disclosure of Police Personnel Data (Dkt. No. 589) is **DENIED**; and

6. Armstrong's Motion to Compel Disclosure of Post-Conspiracy Statements by Codefendants (Dkt. No. 590) is **DENIED**.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that:

1. Armstrong's Motions to Dismiss (Dkt. No. 582, 810) be DENIED; and

2. Armstrong's Motions to Suppress (Dkt. Nos. 584, 808) be GRANTED in part and DENIED in part as described herein.

Dated: July 24, 2026

s/ David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), “a party may file and serve specific written objections to a magistrate judge’s proposed finding and recommendations within 14 days after being served a copy” of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).